FRANCKE B. HOBART

*v.*

LYNDA A. HOBART *et al.*

*Filed at Springfield January 14, 1895.*

1. WILLS—*when proof of a codicil establishes the will.* A will is established (except such portions as are revoked or altered by the codicil) by proof of a codicil written on the same paper, or clearly and unmistakably referring to the will, so as to preclude all doubt of its identity without further proof.

2. SAME—*effect of proof of handwriting of deceased witness to will.* Proof of the handwriting of a deceased witness to a will is *prima facie* sufficient as to him, especially where the signatures of the witnesses are attached to an attesting clause that the will or codicil was written, signed and sealed in their presence.

3. SAME—*proof of testator's signature when one witness has died.* Under the Statute of Wills, upon a trial in the circuit court *de novo,* on appeal from the county court, proof of the testator's signature to a will may be made by testimony other than that of a surviving subscribing witness, where one witness is dead.

4. SAME—*subscribing witness need not see the signing or the signature.* The fact that the sole surviving subscribing witness to a will failed to notice whether or not it was signed, and cannot remember whether he saw the signature or not, does not overcome the *prima facie* case made in favor of its due execution by the testimony of the witness that he signed it at the request of the testator and in his presence.

*Hobart* v. *Hobart,* 53 Ill. App. 133, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

EWING & WIGHT, for appellant:

To entitle a will to probate four things must concur: First, it must be in writing and signed by the testator, or in his presence by some one under his direction; second, it must be attested by two credible witnesses in the presence of the testator; third, two witnesses must prove that they saw the testator sign the will in their presence, or

that he acknowledged the same (the signing) to be his act and deed; fourth, they must swear that they believe the testator was of sound mind and memory at the time of the signing or acknowledging the signature. Starr & Curtis' Stat. sec. 2, chap. 148; *Dickie* v. *Carter*, 42 Ill. 376; *Crowley* v. *Crowley*, 80 id. 469; *Canatsey* v. *Canatsey*, 130 id. 397.

A witness need not know the contents of a will or codicil. It is the signature of the testator he attests. *Griffith* v. *Griffith*, 5 B. Mon. 511; *Raudebaugh* v. *Shelley*, 6 Ohio St. 307; *Canada's Appeal*, 47 Conn. 450.

Kerrick & Spencer, for appellees:

Where a codicil is on the same paper with the will, or identification with the will is otherwise complete, proof of the codicil establishes the will so far as not revoked. *Duncan* v. *Duncan*, 23 Ill. 304; *Ware* v. *People*, 19 Ill. App. 196; Williams on Executors, 212; American Law of Administration, sec. 47; *Love* v. *Johnson*, 12 Ind. 355; *Jones* v. *Hartley*, 2 Whart. 103; *Harvard* v. *Davis*, 2 Binn. 406; *Payne* v. *Payne*, 18 Cal. 291; *Jones* v. *Shewmaker*, 35 id. 151; *Brown* v. *Clark*, 77 N. Y. 369; *McCurdy* v. *Neal*, 42 id. 333; *Rose* v. *Drayton*, 4 Rich. Eq. 260; *Burge* v. *Hamilton*, 72 Ga. 568; *Haven* v. *Forster*, 14 Pick. 534; *Stover* v. *Kendall*, 1 Coldw. 557.

Attesting witnesses need not know the document attested is signed. If the will is signed by the testator when offered for probate, and he declared it his will when witnesses signed it, the presumption is it was signed at or before the testation thereof, and is a good attestation. *Holloway* v. *Galloway*, 51 Ill. 159; *Yoe* v. *McCord*, 74 id. 33; *Canatsey* v. *Canatsey*, 130 id. 397; *Osborn* v. *Cook*, 11 Cush. 532; *Nickerson* v. *Buck*, 12 id. 332; *Ela* v. *Edwards*, 16 Gray, 91; *Tilden* v. *Tilden*, 13 id. 110; *Dewey* v. *Dewey*, 1 Metc. 349; *Hogan* v. *Grosvenor*, 10 id. 56; *Mundy* v. *Mundy*, 2 McCart. (N. J. Ch.) 290; *In the matter of Hunt*, 110 N. Y. 280; *Lane* v. *Lane*, 95 id. 494; *In the matter of Beckett*, 103 id. 167; *In the*

*matter of Phillips*, 98 id. 267; *Raudebaugh* v. *Shelley*, 6 Ohio
St. 307; *Dean* v. *Dean*, 27 Vt. 746 ; *Allen* v. *Griffin*, 69 Wis.
533 ; *Stonehouse* v. *Evelyn*, 3 P. & W. 254; *Grayson* v. *Atkinson*, 2 Ves. Sr. 456 ; *Ellis* v. *Smith*, 1 Ves. Jr. 11; *Westbeech*
v. *Kennedy*, 1 V. & B. 362 ; *White* v. *Trustees*, 6 Bing. 310 ;
*Wright* v. *Wright*, 7 id. 457; *Johnson* v. *Johnson*, 1 C. & M.
140 ; *Hall* v. *Hall*, 17 Pick. 373 ; *Nelson* v. *McGiffert*, 3 Barb.
Ch. 162.

MAGRUDER, J.: Harrison E. Hobart of McLean County
died testate on December 22, 1892. On January 9, 1893,
his widow, Lynda A. Hobart, presented his will and codicil
thereto for probate to the County Court of that County,
where it was admitted to probate. From the order admitting it to probate, the appellant here, Francke B. Hobart,
one of the sons of the testator, took an appeal to the
Circuit Court of said County. The Circuit Court, after
evidence introduced and hearing had, affirmed the order
of the County Court, and directed that the will and codicil
be admitted to probate. Upon appeal to the Appellate
Court, the latter Court affirmed the order of the Circuit
Court, and from the judgment of the Appellate Court the
present appeal is prosecuted.

The original will was dated October 17, 1885. By
its terms the testator gave and bequeathed to his wife,
Lynda, all his real estate consisting of two tracts of land,
one containing 40 acres and the other containing 60
acres, and all his personal property, "including horses,
cattle, moneys, credits, bank accounts," and to his sons,
Howard E. Hobart and Francke B. Hobart each the sum
of $100.00. The original will was signed "Harrison Earl
Hobart. [Seal]." Its attesting clause and the subscriptions thereto are as follows :

"The above and foregoing instrument was, at the date
thereof, signed, sealed, published and declared by the
said Harrison Earl Hobart as and for his last will and
testament, in presence of us, who, at his request and in his

presence, and in the presence, of each other, have sub-
scribed our names as witnesses.

> MRS. MARIS B. HOWARD, Farmer City, Ill.
> MARSHAL F. HOWARD, Farmer City, Ill."

The codicil to the will and the attesting clause and
signatures thereto are as follows.

"*Codicil:* The within will made this 9th day of June,
one thousand eight hundred and eighty-eight (1888). I
hereby will or give or direct that the property willed to
my wife, Lynda Adams Hobart, in the within instrument,
after her decease I give to my son, Howard Earl Hobart.

> HARRISON EARL HOBART.     (L. S.)

"Written, signed and sealed in the presence of

> MORDECIA TAMLING, Normal, McLean Co., Ill.
> BETSEY A. TAMLING, Normal, McLean Co., Ill."

*First*, objection is made, that the proof introduced was
of the codicil only, and not of the will. It was shown
that the original will, and the codicil, and attestations,
were all written upon the same paper. The codicil refers
to the will, and changes it in part only.. When the codicil
is written on the same paper as the will, or clearly and
unmistakably refers to the will so as to preclude all
doubt of its identity, proof of the codicil establishes the
will without further proof, except such portions thereof
as are revoked or altered by the codicil. In such case,
the codicil operates as a republication of the original
will, and gives to it the same force as if it had been
executed at the date of the codicil, the two instruments
being regarded as one and as speaking from the date of
the codicil. "Adding a codicil brings the will to it, and
makes it a will from the time of executing the codicil."
(*Duncan* v. *Duncan*, 23 Ill. 306; 1 Redfield on Law of Wills,
marg. page 288; 3 Am. & Eng. Enc. of Law, page 301).
It follows, that, if the codicil in the case at bar was duly
executed and attested, such portions of the original will,
as were not changed by it, were thereby reaffirmed.

*Second,* objection is made, that the record does not show the testimony of the two subscribing witnesses to the codicil. It is proven, that Mordecia Tamling, one of the subscribing witnesses to the codicil, died in February, 1890, more than two years before the death of the testator. The sixth section of the Act in regard to Wills (2 Starr & Cur. Stat. page 2469) provides, that "in all cases where any one or more of the witnesses to any will * * * shall die or remove to parts unknown, so that his or her testimony cannot be procured, it shall be lawful * * * to admit proof of the handwriting of any such deceased or absent witness, as aforesaid, and such other secondary evidence as is admissible in courts of justice to establish written contracts generally, in similar cases," etc. Here, Betsey A. Tamling, the other subscribing witness, swore that the signature of her husband, Mordecia Tamling, to the attestation of the codicil was in his handwriting. His handwriting was also proven by the testimony of two other witnesses. Proof of the handwriting of the deceased witness is *prima facie* sufficient, especially where the signatures of the witnesses are attached to an attesting clause that the will or codicil was written, signed and sealed in their presence. (*Ela et al. Exrs.* v. *Edwards,* 16 Gray, 91). The death of the witness merely changes the form of the proof. It permits secondary evidence to be introduced of the due attestation and execution of the will. The attestation is then to be shown, as it would be in case of deeds, by proof of the handwriting of the witness. As to him it is to be presumed, that he duly attested the will in the presence of the testator. As was said by the Supreme Court of Massachusetts in *Nickerson* v. *Buck,* 12 Cush. 332: "As regards this witness, if nothing appears in other parts of the evidence to control the presumption resulting from proof of his handwriting, it may be taken that, as to his attestation, it was properly made to the signature by the testator." (*Robinson* v. *Brewster,* 140 Ill. 649).

Without deciding that, under section 6 above quoted, other secondary evidence besides proof of the handwriting of the deceased witness is necessary in all cases, it is sufficient to say, that in this case there was such other secondary evidence. Betsey A. Tamling, the survivor of the subscribing witnesses, and two other witnesses swore in the Circuit Court, that the signature to the will was in the handwriting of the testator. Counsel for appellant insist, that the Circuit Court erred in receiving the evidence of the other witnesses besides Mrs. Tamling to the testator's signature, upon the ground that, under the decisions of this Court, where the appeal is to the Circuit Court from an order of the Probate Court admitting the will to probate, the evidence in the Circuit Court to prove the will must be confined to that of the subscribing witnesses. (*Andrews* v. *Black*, 43 Ill. 256; *Weld* v. *Sweeney*, 85 id. 50). This undoubtedly is the rule where both the subscribing witnesses are alive, or not in "parts unknown." But under the circumstances of this case where one of the subscribing witnesses was deceased, we are inclined to think that proof, upon the hearing in the Circuit Court, of the testator's signature to the will by other testimony than that of the subscribing witness who survived, comes under what the statute denominates "such other secondary evidence as is admissible in courts of justice to establish written contracts generally in similar cases."

*Third,* it is contended, that the proof, introduced to establish the execution of the codicil, ought to have shown, that the testator signed it in the presence of the attesting witnesses, or that he acknowledged the *signature* thereto to be his act and deed, and that the proponents were bound to show affirmatively, that the will was signed when it was attested.

Section 2 of the Act in regard to Wills provides, that "all wills * * * shall be reduced to writing and signed by the testator or testatrix, or by some person in his or her presence, and by his or her direction, and attested in

the presence of the testator or testatrix by two or more credible witnesses, two of whom declaring on oath or affirmation, before the county court of the proper county, that they were present and saw the testator or testatrix sign said will, testament or codicil in their presence, or acknowledged the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same, shall be sufficient proof of the execution of said will, etc., to admit the same to record."

We think, that the words, "the same," following the word, "acknowledged," in section 2, refer back to the words, "said will," so that the clause would mean : "or acknowledged *the said will* to be his or her act and deed." The question has sometimes arisen, whether, under a local statute or code, the requirement is that the testator acknowledge the *signature* to the will to be his act and deed, or that he acknowledge the *will* to be his act and deed. In England the statute of 1 Victoria upon this subject requires the signature of the testator to be made or acknowledged. (1 Jarman on Wills, marg. pages 83, 84). In New York, and perhaps in some of the other States, the statute requires that there must be an acknowledgment of the signature. (Schouler on Wills—2 ed.—sec. 325). Decisions based upon these statutes have held in substance, that there is not a sufficient acknowledgment of the signature by the testator when he produces a will and requests the witnesses to sign it, unless his signature is visibly apparent on the face of the paper, and is seen or can be seen by the witnesses, especially if he does not explain the instrument to them. (Schouler on Wills— 2 ed.—secs. 321-325 ; 1 Williams on Executors, marg. page 88 ; 1 Jarman on Wills—Bigelow's 6th ed.—marg. page 84). But we are inclined to think that these decisions are not applicable where the statute, as is the case with that in this State, merely requires that the testator acknowledge the *will or codicil* to be his act and deed, and

does not specifically and in terms require the *signature* to be acknowledged. A man may acknowledge an entire written instrument to be his act and deed without necessarily calling the attention of those before whom he produces it to any particular part of such instrument. But if he is required to make acknowledgment of a specified part of it, it may be requisite that attention should be directed to that part.

Mrs. Tamling swore, that her signature to the attesting clause was in her handwriting, and her husband's in his handwriting; that the testator and his wife brought the will to her house, and were both present in the room when it was signed by the witnesses; that she and her husband signed it as witnesses in a few moments of each other; that the signature to the will produced in court is the signature of the testator; that she signed it in her own house; that the testator had it when she and her husband first saw it; that the testator and his wife were going away, and wanted us to sign the will before they went; that "we were talking about it altogether;" that "they laid it on the table, and when he got ready to take it, he took it up;" that he was certainly of sound mind and memory when she signed her name; "we were talking that he was going away, he was making preparation to go out, and his will was made, and he came there, and wanted we should sign the will; he said that it was not necessary for us to know what was in the will; he said he had talked with a lawyer, and if you was acquainted with a person so as to trust their word, you could sign it; we knew it was his will; they said they wanted us to sign the will; I saw nothing but the place to write our names; there was nothing said about whether Mr. Hobart had signed it; as to seeing where he had signed it we didn't pay any attention to that; he did not sign it in our presence; it was all done before he came there; he did no writing after he came there; I suppose I saw his signature, but I paid no attention to it;

I can't say positively whether I saw his signature or not; I didn't think anything about it; I sat down to write my name; there were papers laid on the will; we didn't move it; I don't know whether it was designed to conceal it; there was room enough for us to see to write— that was all that I know anything about; there was some talk that there was no danger about signing anything when the individual told us what was in the document we put our names to; I didn't ask him any questions; I can't say positively that I didn't see whether it was signed or not; I didn't think anything about that; we had advised, and we had talked about various things; Mr. Hobart told us it was his will and wanted us to witness it; whether he had signed it at that time or not I don't think there was anything said about anything like it; I supposed of course it was straight and all right; I have no distinct recollection of our attention being called to the question whether or not he had signed it; there was nothing said about it."

While it is true that the witness cannot remember seeing the signature, yet she cannot say positively that she did not see it. It is clear, however, that the testator produced before the subscribing witnesses an instrument in writing which he stated to be his will, and asked them to sign it as witnesses. A will must be reduced to writing, and signed by the testator, or by some one in his presence and under his direction. The words, "said will," in section 2 refer back to a will reduced to writing and signed. An instrument not in writing and not signed is not a will. When the testator called the paper his will, it will be presumed, in the absence of any evidence to the contrary, that he had signed it, inasmuch as a signature was necessary to justify him in calling it a will. Included in the declaration of the testator to the witnesses that the paper was his will, was the further declaration that he had signed it. Where the testator declares to the witnesses that the instrument is his will,

or requests them to attest his will, such declaration or request implies that the same has been signed by him. (*Nickerson* v. *Buck*, 12 Cush. 332). In the latter case it was said : "The request to these witnesses to attest his will was quite enough to authorize the inference that he had executed a paper as a will, and was equivalent to his acknowledgment that he had signed some paper as a will." The fact, that a testator seeks the attestation of witnesses and gives directions to them as to signing their names, furnishes strong presumptive proof that he had signed the will. (*Dewey* v. *Dewey*, 1 Metc. 349). Where a testator took a paper from his desk, and asked a witness to sign it, and pointed out the place where he wished him to put his name, and the witness did so, not knowing what the paper was, and not noticing the signature on the paper, it was held that there was a good attestation of the will. (*Ela et al. Exrs.* v. *Edwards*, 16 Gray, 91).

In addition to the presumption, that the testator, Hobart, had signed the will, arising from his declaration that it was his will and from his request to the witnesses to sign it, there is proof that the signature to the will produced is his, and that the two subscribing witnesses signed the attestation clause in his presence. Thus, a *prima facie* case is made in favor of the due execution of the will; and this *prima facie* case is not overcome by the mere fact, that the subscribing witness here testifying failed to notice whether the will was signed or not, and cannot remember whether she saw the signature or not. (*Mundy* v. *Mundy*, 2 McCart. N. J. Ch. 292 ; *Raudebaugh* v. *Shelley*, 6 Ohio St. 307; *Hogan* v. *Grosvenor*, 10 Metc. 56; *Osburn* v. *Cook*, 11 Cush. 532; *Dickie* v. *Carter*, 42 Ill. 376; *Allison* v. *Allison*, 46 id. 60; *Holloway* v. *Galloway*, 51 id. 159; *Yoe* v. *McCord*, 74 id. 33 ; *Canatsey* v. *Canatsey*, 130 id. 397.)

We are inclined to hold, that the evidence was sufficient to authorize the admission of the will to probate.

Accordingly, the judgment of the Appellate Court is affirmed. *Judgment affirmed.*